**PICILLO CARUSO O'TOOLE**
A Professional Corporation
60 Route 46 East
Fairfield, New Jersey 07004
(973) 667-6000
Attorneys for Plaintiff, Joaquin Matias
Attorney of Record: Juan C. Fernandez (JF 7761)

*12:39 P.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JOAQUIN F. MATIAS<br><br>                Plaintiff,<br><br>vs.<br><br>CITY OF NEWARK and BO KEMP in his<br>capacity as Business Administrator for the<br>City of Newark<br><br>                Defendants. | Civil Action No. O8-789(SDW)<br><br>        Civil Action<br><br><br><br>**COMPLAINT and JURY DEMAND** |

**COMPLAINT**

This is an action pursuant to 42 U.S.C. § 1983 for damages.

**JURISDICTION**

1.    This Court has jurisdiction pursuant to 28 U.S.C. §1331, as this is a Civil Action arising under the Constitution of the United States.

2.    This Court has jurisdiction over the remaining claims under 28 U.S.C. § 1367, as they are so related to claims in the action within original jurisdiction as to be considered part of the same case or controversy.

**VENUE**

3.    Venue is proper in the District of New Jersey as all of the events giving rise to the instant action occurred in the State of New Jersey.

## PLAINTIFF

4.      Plaintiff is a domiciliary of the State of New Jersey, residing at 28 Moonachie Road, Moonachie, New Jersey.  At times relevant, Plaintiff was an employee of Defendant City of Newark, working in the Division of Economic Development within the Department of Economic & Housing Development and the Department of Administration, simultaneously.

## DEFENDANTS

5.      Defendant City of Newark is a duly-formed city under N.J.S.A. 40:69A-1 et seq. (hereinafter "Faulkner Act").

6.      Upon information and belief, Defendant Bo Kemp (hereinafter "Kemp") is and was the Business Administrator for the City of Newark at times relevant. In his official capacity, his address is 920 Broad Street, Newark, New Jersey.

## BACKGROUND

7.      Plaintiff began working for Defendant City of Newark on or about October 8, 1999 on a provisional basis, serving as the Director of the City of Newark Division of Economic Development.  Plaintiff was employed from October 8, 1999 to May 1, 2000 by Newark Economic Development Corporation, providing such time for Plaintiff to be transferred to the City of Newark payroll.

8.      During his tenure as Director, Plaintiff performed in an exemplary fashion, solidifying a strong reputation within the Newark business community through his experience in business, academic and professional credentials.  On the basis of his accomplishments throughout his seven-year tenure, Plaintiff has received several salary promotions based on his significant contributions to signature and complex economic development projects working on behalf of the

2

Department of Administration, Department of Economic & Housing Development and Department of Law, respectively.

9.      Based on the recognition of Plaintiff's extensive background and skills and as continued inducement to retain him as an employee of the City of Newark, Plaintiff received a salary supplement (hereinafter "Supplement") from the Riverfront Corporation, from May 2000 to April 2001, and then from the NEDC Riverfront Corporation, from May 2001 to April 27, 2007. This supplement has been properly authorized by the Board of Directors of Riverfront Corporation and NEDC Riverfront Corporation, respectively, as well as by the former Mayor, former Business Administrator and former Director of Economic & Housing Development.  Plaintiff has filed Financial Disclosure Statements for the years 1999 through 2007 pursuant to the Local Government Ethics Law, N.J.S.A. 40A:9-22.1 *et seq.*

10.      On or about April 28, 2005, Plaintiff received a memorandum from City of Newark Personnel Director John K. D'Auria stating that Plaintiff was required to take the Civil Service Examination because it was necessary for eligibility for his civil service position.

11.      On or about May 2, 2005, Plaintiff applied to take the Civil Service Examination.

12.      On or about January 18, 2006, Plaintiff received notice from the New Jersey Department of Personnel that he had passed the Civil Service Examination.

13.      On or about January 31, 2006, Plaintiff notified the City of Newark Division of Personnel that he was deemed eligible to qualify for the Director of Economic Development position, which he occupied at that time, by the New Jersey Division of Personnel.

14.      On or about April 18, 2006, Plaintiff was asked to sign a form request generated by Defendant City of Newark that changed his provisional employment status to permanent, which would ensure employment indefinitely unless good cause was shown. Plaintiff signed the request,

3

certifying that he approved of the change in employment designation.

15.　　Upon information and belief Corey Booker was elected Mayor of Defendant City of Newark on May 9, 2006.  On or about June 8, 2006, Plaintiff received a letter from Mayor Booker indicating that Plaintiff was being removed from his position with the City of Newark Division of Economic Development, effective July 1, 2006.  The letter stated that the decision to remove Plaintiff was in Mayor Booker's official capacity.

16.　　On or about July 1, 2006, absent any correspondence reversing the decision of the June 8, 2006 letter, Plaintiff was constructively removed from his position as Director of Economic Development.

17.　　On or about July 10, 2006, Plaintiff discussed his future role with Mayor Booker's Chief of Staff, Pablo Fonseca.  He indicated that Plaintiff's role within the City of Newark was assured given his strong reputation in the business community and that he would receive a letter rescinding the June 8, 2006 correspondence.  To date, Plaintiff has not received any correspondence to this effect.

18.　　On or about July 19, 2006, through multiple memoranda, Plaintiff was no longer authorized to serve as designee of the Business Admininstrator to undertake the Strategic Housing and Redevelopment Project Enhancement Program (also known as the Neighborhood Program). The Department of Administrator was designated by Municipal Council to exercise a scope of authority for the Neighborhood Program being to administer and manage the Neighborhood Program, select the Neighborhood Projects to be funded and authorize disbursements. Memorandum from the then Business Administrator, Richard Monteilh, dated June 22, 2006, to the City Clerk ratifies designation of Plaintiff as the Department of Administration's designee to exercise such scope of authority.  In addition, management of all Neighborhood Projects were

4

transferred to Adam Zipkin, who was, upon information and belief, then the Acting Director of Economic & Housing Development. Plaintiff was instructed to further transfer all files to Zipkin; he fully complied with this request.

19.     On or about July 20, 2006, Plaintiff presented, in detail, the operations, projects, and financial status of the Strategic Housing and Redevelopment Project Enhancement Program in a meeting attended by Defendant Kemp among others. Plaintiff provided the governing Policies and Procedures, an account balance of funds remaining and project descriptions.

20.     On or about July 24, 2006, Plaintiff met with Defendant Kemp to discuss his future role with the Department of Administration; review his extensive role in prior signature projects; and discuss the materials Plaintiff sent to Defendant Kemp and Mayor Booker concerning improvement of City Operations as were hand-delivered on June 16, 2006.

21.     On or about September 13, 2006, Robert Dooley who is, upon information and belief, the City Architect introduced to Plaintiff the concept of developing a capital projects plan and need for asset management. Dooley sought Plaintiff's lead on the project given his abilities in strategy, planning and implementation.   Plaintiff agreed to participate provided he received direction to do so by the Defendant Kemp.

22.     On or about September 20, 2006, Plaintiff met with City of Newark Deputy Mayor Stefan Pryor to discuss Plaintiff's future role. Pryor provided no assurances of Plaintiff's position or role. Instead, Pryor emphasized the need to build trust, warning against over-enthusiasm and cautioning against Plaintiff taking an interventionist posture in projects. Pryor further commented that a great deal of change would occur and many new individuals (including consultants) would be brought on board.

23.     On or about September 29, 2006, Plaintiff was asked to meet with Defendant Kemp,

5

who asked Plaintiff to lead the City of Newark's Asset Management Initiative and Pension & Risk Management and, further, be heavily engaged with the Restructuring Initiative as was being formulated by McKinsey & Associates. Defendant Kemp indicated that these matters were of great importance to Plaintiff and that confidentiality was vital. Plaintiff recommended to Defendant Kemp that in time it might be preferable that Pension & Risk Management be outsourced or handled by a different individual, but that Plaintiff would set up the program. Moreover, Plaintiff offered to continue handling key projects for the Department of Economic Development so as to facilitate a smooth transition.

24.     On or about October 10, 2006, Plaintiff met with Pryor to discuss the strategy for development of the Newark Port/Airport area. Pryor assigned the task of co-developing the blueprint for the Newark Port/Airport to Plaintiff, which included meeting with Boston Consulting Group, staff members and of-counsel.

25.     On or about October 16, 2006, Plaintiff presented the draft findings of the Asset Management Analysis to Defendant Kemp; William Letona, who is, upon information and belief Defendant Kemp's Chief of Staff; Marilyn Gaynor, who is, upon information and belief, the Manager of Public Buildings and Dooley. Defendant Kemp approved the approach proposed by Plaintiff and authorized continued work.

26.     On or about October 24, 2006, Plaintiff discussed with Defendant Kemp his current compensation package as including the Supplement. Defendant Kemp inquired as to how this could be viewed politically to which Plaintiff responded that the Supplement was merely provided in recognition of Plaintiff's skills, competencies, extensive work load, and significant accomplishment as well as an inducement to continue employment. Plaintiff commented that this discussion was important so as to not cause Defendant Kemp any vulnerability particularly as

6

Plaintiff is handling several "sensitive" projects of Asset Management, Pension & Risk Management and Restructuring.

27.     On or about November 9, 2006, Defendant Kemp informed Plaintiff about a "battle" over his future role.  Kemp indicated that the "battle" was not about competency to handle the job nor even about the Supplement, but about politics and past associations. Moreover, Defendant Kemp indicated that questions were being raised as to whether Plaintiff should be handling matters within the Department of Administration considered to be highly sensitive or whether Plaintiff should be in City Hall at all.   Plaintiff responded that he was neither politically motivated nor politically involved; instead was focused on contributing to Newark's development efforts as a professional.  Plaintiff further commented that in a small city like Newark, most every individual had some type of "past association."  Plaintiff further indicated he would make himself available to be questioned by a panel of those concerned with his "past associations."  However, in response to Plaintiff's inquiry as to the prognosis of this battle, Defendant Kemp commented that the "battle" was winnable.

28.     On or about December 22, 2006, Plaintiff met with Defendant Kemp.  Defendant Kemp told Plaintiff that his work product was excellent, and that the Department of Administration was pleased to have him on board.  Defendant Kemp further commented that Plaintiff handled these matters with professionalism, confidentiality and trust.

29.     During the same meeting of December 22, 2006, Defendant Kemp stated that Plaintiff's future on the Department of Administration was not solid yet, due to politics and past associations.  Kemp stated that he felt the political battle was winnable and hoped to have an answer by mid-January.

30.     On or about January 10, 2007, Defendant Kemp indicated to Plaintiff that he did not

7

have a final answer on Plaintiff's future with the Department of Administration. Kemp indicated that politics and past associations remained at issue and that it was not a personal issue with Plaintiff. Defendant Kemp stated that the chances of winning this battle appeared better as the administration realized that hiring competent people who can also operate in the Newark environment was very difficult. Defendant Kemp indicated he was operating on the assumption that Plaintiff would be allowed to stay in the Department of Administration.

31.     On or about February 14, 2007, Plaintiff met with Defendant Kemp and Letona. Defendant Kemp stated that Plaintiff had no future with the City and that he had until the end of April to finish up his work and find other employment. Defendant Kemp expressed the hope that Plaintiff would continue to work on the Asset Management Initiative based on his belief that Plaintiff was a professional, consciously-minded individual. Again Plaintiff inquired if the basis was "incompetence," to which Kemp stated categorically not as Plaintiff was probably one of the most competent individuals in City Hall. The Defendant indicated that politics was the issue. At no time were the problematic political issues, past associations or the sources of such concerns revealed to Plaintiff. In addition, Plaintiff was never given an opportunity to address such concerns.

32.     From the period October 2006 through April 20, 2007, as related to the Asset Management Initiative, Plaintiff formulated the underlying analysis demonstrating a need for a comprehensive Asset Management Plan. With Mr. Dooley, Plaintiff formulated the elements of the Asset Management Plan: 10-Year Capital Budget, Financing Plan, Asset Management Board, Critical Asset Management Plan (CAMP) and General Asset Management Plan (GAMP). Key milestones and presentations include: presentation of Asset Management Inventory's Findings on October 16 (see Para. 26 hereinabove); Asset Management Plan Power-point Presentation on or around January 19, 2007 to Defendant Kemp, Jermaine James, who is, upon information and belief,

8

the Deputy Chief of Staff to the Mayor, Fonseca, Desiree Peterkin-Bell, who is, upon information and belief, the Director of Communications, James Adams, who was, upon information and belief, the Director of Engineering, Dooley and Gaynor along with consultants; the same Power-point Presentation then on or around January 22, 2007 to Mayor Booker, Ms. Peterkin-Bell and Fonseca in attendance by Dooley and consultants; Financial Analysis on bond, sales/leaseback and capital lease options during April 4-11 2007 formulated through consultations with outside counsel, Casey Crawford, who is, upon information and belief, the newly hired Pension & Risk Management Analyst; Capital Budget Pre-Meetings with Mayor Booker, Fonseca and Defendant Kemp on or around April 11, 2007 and submission of Draft Executive Summary prepared by Plaintiff; Capital Budget Pre-Meetings on around April 16, 2007 with Mayor Booker, Fonseca and Defendant Kemp, West Ward Council Member Ronald Rice, North Ward Council Member Anibal Ramos, Jr., and Member-at-Large Council Member Carlos Gonzalez along with consultants and staff; and additional Capital Budget Pre-Meeting on or around April 17, 2007 with Mayor Booker, Fonseca and Council President Mildred Crump, Central Ward Council Member Dana Rone and East Ward Council Member Augusto Amador, along with consultants and staff; and finalize on or around April 20, 2007 the Executive Summary to the Asset Management Plan and Capital Budget that also contain the concerns of various Council Members.

33.     On the basis of his exemplary work, Defendant Kemp repeatedly and publicly commended the work of Plaintiff in connection with the Asset Management Plan including in a meeting of all Division Managers, Division Directors and Department Directors held sometime around mid April, 2007.

34.     On or around April 27, 2007, Plaintiff's employment contract that provided the Supplement to his salary with the City of Newark through NEDC Riverfront Corporation was

wrongfully terminated as a result of Defendants' wrongful acts.

### FIRST COUNT
### 42 U.S.C. 1983 VIOLATION/FREEDOM OF ASSOCIATION

35.     Plaintiff repeats and realleges all of the allegations made in the foregoing sections of the Complaint as though set forth at length herein.

36.     Pursuant to N.J.S.A. 40:69A-29(a), part of the Faulkner Act, municipalities have the power to "[o]rganize and regulate its internal affairs, and to establish, alter, and abolish offices, positions and employments and to define the functions, powers and duties thereof and fix their terms, tenure and compensation."

37.     Pursuant to N.J.S.A. 40:69A-39, in conjunction with N.J.S.A. 40:69A-29(a) above, Mayor Booker has the authority to exercise the "executive power of the municipality."

38.     Pursuant to N.J.S.A. 40:69A-39, in conjunction with N.J.S.A. 40:69A-44, Defendant Kemp has, subject to the discretion of the Mayor, the authority to supervise the administration of departments as relates to budgeting, personnel and purchasing.

39.     Defendants City of Newark and Kemp, individually and/or collectively, acting under the color of state law noted above, deprived Plaintiff of his clearly-established right to freedom of association secured by the First Amendment to the Constitution of the United States by and through the termination of Plaintiff's employment due to his previous political and professional associations.

40.     The harm facilitated by the actions and inactions of Defendants City of Newark and Kemp, individually and/or collectively, was foreseeable and a direct result of said actions and failures to act.

41.     Defendants City of Newark and Kemp, individually and/or collectively, with

10

deliberate indifference to the consequences, terminated Plaintiff for his past political and professional associations, which directly caused Plaintiff constitutional harm.

42. Reasonable persons in Defendants City of Newark and Kemp's positions would have been aware of Plaintiff's constitutional entitlement to freedom of association.

43. No reasonable officials or persons in Defendants City of Newark and Kemp's positions could have believed that their conduct comported with established legal standards, in light of the clearly-established law.

44. Defendants' actions and inactions, as alleged here, resulted in the deprivation of Plaintiff's right under the First Amendment to freedom of association, and have caused Plaintiff to suffer damages.

**WHEREFORE**, Plaintiff demands judgment against Defendants jointly and severally for compensatory damages, back pay, front pay, lost fringe benefits, medical, hospital and dental coverage, attorney's fees, interest, costs of suit, punitive damages, and whatever other relief this Court deems just and proper.

**SECOND COUNT**
**42 U.S.C. 1983 VIOLATION/DUE PROCESS**

45. Plaintiff repeats and realleges all of the allegations made in the foregoing sections of the Complaint as though set forth at length herein.

46. Defendants City of Newark and Kemp, individually and/or collectively, acting under the color of state law in the First Count of the Complaint, deprived Plaintiff of his clearly-established right to a pre-termination hearing for his Civil Service position as Director of the City of Newark Division of Economic Development.

47. As a result of the failure of holding a pre-termination hearing, Defendants City of

11

Newark and Kemp, individually and/or collectively, acting under color of state law noted above, deprived Plaintiff of his rights to the substantive and procedural components of the due process clause of the Fourteenth Amendment of the United States Constitution.

48.     The harm facilitated by the actions and inactions of Defendants City of Newark, Kemp, individually and/or collectively, was foreseeable and a direct result of said actions and failures to act.

49.     No reasonable officials or persons in Defendants City of Newark and Kemp's positions could have believed that their conduct comported with established legal standards, in light of the clearly-established law.

50.     Defendants' actions and inactions, as alleged here, resulted in the deprivation of Plaintiff's right under the First Amendment to freedom of association, have caused Plaintiff to suffer damages.

**WHEREFORE**, Plaintiff demands judgment against Defendants jointly and severally for compensatory damages, back pay, front pay, lost fringe benefits, medical, hospital and dental coverage, attorney's fees, interest, costs of suit, punitive damages, and whatever other relief this Court deems just and proper.

**THIRD COUNT**
**WRONGFUL TERMINATION**

51.     Plaintiff repeats and realleges all of the allegations made in the foregoing sections of the Complaint as though set forth at length herein.

52.     Defendants City of Newark and Kemp, individually and/or collectively, wrongfully terminated Plaintiff's employment because of perceived political affiliations and past associations, and not any legally appropriate cause.

12

53.     Defendants have no regulatory or statutory basis for effectuating Plaintiff's termination from his position with Defendant City of Newark.

54.     As a result, Plaintiff has been damaged, directly and proximately, by Defendants' wrongful termination of Plaintiff.

**WHEREFORE**, Plaintiff demands judgment against Defendants jointly and severally for compensatory damages, back pay, front pay, lost fringe benefits, medical, hospital and dental coverage, attorney's fees, interest, costs of suit, punitive damages, and whatever other relief this Court deems just and proper.

## FOURTH COUNT
## CONSTRUCTIVE DISCHARGE

55.     Plaintiff repeats and realleges all of the allegations made in the foregoing sections of the Complaint as though set forth at length herein.

56.     Plaintiff's working conditions were intolerable, due to the fact that the Defendants, individually and/or collectively, were engaged in a protracted process stringing Plaintiff along with continued work and employment opportunities within the Department of Administration, upon which Plaintiff relied, only to then state that the outlook was poor.

57.     Defendants' intimations and statements regarding Plaintiff's employment, or the lack thereof, caused Plaintiff's resignation.

58.     Defendants' actions have imposed upon the Plaintiff working conditions so intolerable that a reasonable person subject to them would resign.

59.     Defendants knew, or should have known, that the lack of certainty regarding Plaintiff's position would force him to resign.

60.     As a result, Plaintiff has been damaged, directly and proximately, by Defendants'

constructive termination of Plaintiff.

**WHEREFORE**, Plaintiff demands judgment against Defendants jointly and severally for compensatory damages, back pay, front pay, lost fringe benefits, medical, hospital and dental coverage, attorney's fees, interest, costs of suit, punitive damages, and whatever other relief this Court deems just and proper.

**FIFTH COUNT**
**BREACH OF CONTRACT**

61.     Plaintiff repeats and realleges all of the allegations made in the foregoing sections of the Complaint as though set forth at length herein.

62.     Defendant City of Newark's grant of permanent employment status under the laws of Civil Service in the State of New Jersey created a contract between the parties.

63.     Defendant City of Newark breached that contract when it terminated Plaintiff from his position without cause.

64.     Defendant's breach prevented Plaintiff from performing and from gaining the benefit of his bargain.

65.     As a result, Plaintiff has been damaged, directly and proximately, by Defendant's breach.

**WHEREFORE**, Plaintiff demands judgment against Defendants jointly and severally for compensatory damages, back pay, front pay, lost fringe benefits, medical, hospital and dental coverage, attorney's fees, interest, costs of suit, punitive damages, and whatever other relief this Court deems just and proper.

**SIXTH COUNT**
**BREACH OF GOOD FAITH AND FAIR DEALING**

66.     Plaintiff repeats and realleges all of the allegations made in the foregoing sections of

14

the Complaint as though set forth at length herein.

67.    Defendant City of Newark owed Plaintiff a series of ongoing duties as Plaintiff's employer and as a result of his permanent employment status.

68.    Defendants Kemp and the City of Newark, individually and/or collectively, negotiated with Plaintiff in bad faith, giving various levels of assurances of employment opportunities under false pretenses, knowing that they had no intention of allowing Plaintiff to join the Department of Administration or any part of City Hall.

69.    The effect of Defendants' actions destroyed the Plaintiff's ability to enjoy the fruits of his employment contract.

70.    As a result, Plaintiff has been damaged, directly and proximately, by Defendants' breach of the implied covenant of good faith and fair dealing.

**WHEREFORE**, Plaintiff demands judgment against Defendants jointly and severally for compensatory damages, back pay, front pay, lost fringe benefits, medical, hospital and dental coverage, attorney's fees, interest, costs of suit, punitive damages, and whatever other relief this Court deems just and proper.

**SEVENTH COUNT**
**TORTIOUS INTERFERNCE WITH ECONOMIC ADVANTAGE**
**CITY OF NEWARK EMPLOYMENT CONTRACT**

71.    Plaintiff repeats and realleges all of the allegations made in the foregoing sections of the Complaint as though set forth at length herein.

72.    Plaintiff had a legitimate and protected interest in his continued employment with the Defendant City of Newark.

73.    Defendant Kemp intentionally and unjustifiably interfered with the legitimate and protected interest of Plaintiff.

74.     The benefits that Plaintiff anticipated and enjoyed from his protected interest in continued employment with the City of Newark would have continued but for the wrongful interference of Defendant Kemp.

75.     Defendant's wrongful interference with Plaintiff's protected interest has caused damage, directly and proximately, to Plaintiff.

**WHEREFORE**, Plaintiff demands judgment against Defendants jointly and severally for compensatory damages, back pay, front pay, lost fringe benefits, medical, hospital and dental coverage, attorney's fees, interest, costs of suit, punitive damages, and whatever other relief this Court deems just and proper.

**EIGHTH COUNT**
**TORTIOUS INTERFERNCE WITH ECONOMIC ADVANTAGE**
**RIVERFRONT CONSULTING CONTRACT**

76.     Plaintiff repeats and realleges all of the allegations made in the foregoing sections of the Complaint as though set forth at length herein.

77.     Plaintiff had a legitimate interest in his continued consulting contract with NEDC Riverfront.

78.     Defendant Kemp intentionally and unjustifiably interfered with the legitimate interest of Plaintiff.

79.     The benefits that Plaintiff anticipated and enjoyed from his interest in the consulting contract with NEDC Riverfront would have continued but for the wrongful interference of Defendant Kemp.

80.     Defendant's wrongful interference with Plaintiff's interest caused damage, directly and proximately, to Plaintiff.

**WHEREFORE**, Plaintiff demands judgment against Defendants jointly and severally for

16

compensatory damages, back pay, front pay, lost fringe benefits, medical, hospital and dental coverage, attorney's fees, interest, costs of suit, punitive damages, and whatever other relief this Court deems just and proper.

## JURY DEMAND

Pursuant to F.R.C.P. 38(b), Plaintiff hereby demands trial by jury as to all issues so triable in the above matter.

PICILLO CARUSO O'TOOLE, P.C.
Attorneys for Plaintiff, Joaquin F. Matias


_____
JUAN C. FERNANDEZ

DATED: February 12, 2008

17